# EXHIBIT A

# TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# Garcia-Malene Declaration

*Government Accountability Project v. Food and Drug Administration*
**Civil Action No. 1:12-cv-01954 (KBJ)**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GOVERNMENT ACCOUNTABILITY )
PROJECT, )
 )
      Plaintiff, )
 )
      v. )    Civ. No. 1:12-cv-01954 (KBJ)
 )
FOOD AND DRUG ADMINISTRATION, )
U.S. DEPARTMENT OF HEALTH AND )
HUMAN SERVICES, )
 )
      Defendant. )
 )
 )

**DECLARATION OF GORKA GARCIA-MALENE**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Gorka Garcia-Malene, declare as follows:

1.     I am the Freedom of Information Act ("FOIA") Officer, in the Office of Communications, Center for Veterinary Medicine ("CVM"), United States Food and Drug Administration ("FDA"), in Rockville, Maryland. My job duties and responsibilities include supervising the initial receipt and processing of FOIA requests assigned to CVM, collecting and reviewing documents, and determining CVM's response to the FOIA requests. I have held this position since April 22, 2013.

2.     CVM is the center within FDA responsible for the regulation of drugs, devices, food, and food additives given to, or used on, animals. Part of that regulatory mission includes reviewing sponsor submissions made under Section 105 of the Animal Drug User Fee Amendments of 2008 ("ADUFA"), 21 U.S.C. § 360b(l)(3).

1

3. Previously, from January 30, 2012 to April 19, 2013, I was an International Regulatory Policy Analyst in FDA's Office of International Programs ("OIP"), in Silver Spring, Maryland. My job duties and responsibilities included supervising the initial receipt and processing of FOIA requests assigned to OIP, collecting and reviewing documents, and determining OIP's response to the FOIA requests. Prior to joining OIP, from September 28, 2009 to January 27, 2012, I was a member of the Litigation Team for the Division of Information Disclosure Policy within FDA's Center for Drug Evaluation and Research ("CDER"), in Silver Spring, Maryland. At CDER, I responded to requests for information from Congress and I performed detailed analyses and evaluations of records responsive to complex and sensitive FOIA requests.

4. The statements made in this declaration are based upon my personal knowledge and official records available to me in my capacity as CVM's FOIA Officer.

5. Plaintiff, the Government Accountability Project, submitted a FOIA request, dated February 10, 2011, which requested:

> (1) printed copies of all educational and outreach materials that FDA has prepared in order to inform and assist antimicrobial drug sponsors in fulfilling their duty to report the amount of antimicrobial active ingredient in their drugs that have been sold or distributed for use in food-producing animals pursuant to Sec 105 of the Animal Drug User Fee Amendments of 2008; (2) FDA's data for use of anti-microbial drugs in food-producing animals in 2009 as broken down by container size, strength, and dosage form; and (3) FDA's data for use of anti-microbial drugs in food-producing animals in 2009 as broken down by class of animal.

A true and accurate copy of Plaintiff's FOIA request is attached as Exhibit A(1).

6. On May 4, 2011, FDA released documents responsive to part (1) of Plaintiff's FOIA request.

7.  In a letter dated June 7, 2011, FDA denied parts (2) and (3) of Plaintiff's request on the ground that the data were exempt from disclosure under the FOIA.

8.  In the Complaint initiating this lawsuit, and as I was advised, in later conversations with FDA, Plaintiff modified sections (2) and (3) of its February 2011 request to seek data collected by FDA under 21 U.S.C. § 360b(l)(3) containing the *aggregated* amount of antimicrobials sold for use in food producing animals in 2009, broken down by container size, strength, dosage form, and class of animal, for each antimicrobial class. See Compl. ¶ 21.

9.  FDA conducted a search for records responsive to Plaintiff's modified request and on April 8, 2013, released to Plaintiff two partially responsive documents ("Document 1" and "Document 2"). True and accurate copies of Document 1 and Document 2, as produced to Plaintiff, are attached as Exhibits A(2) and A(3), respectively. Exhibit A(3) also contains an annotated version of Document 2 to aid in explaining FDA's FOIA analysis.

10. Document 1 contains individualized sales data by application number and sponsor name, and includes information about the antimicrobial class, active ingredient, and route of administration for each application. See Ex. A(2). Document 2 contains aggregated sales data broken down by route of administration and further by antimicrobial class. See Ex. A(3). Document 2 also contains the domestic and export totals, which reflects the aggregated total for all of the combined antimicrobial classes, as well as aggregated totals for each route of administration. Id.

11. All of the redactions in Document 1 and forty-one of the redactions in Document 2, identified by the single circles in the annotated version of Document 2, see Ex. A(3), were applied to information that was not responsive to Plaintiff's FOIA request. Specifically, the

redactions are to individualized sales data; as modified, Plaintiff's request seeks only *aggregated* sales data. See Compl. ¶ 21; Joint Status Report, Dkt. No. 5, ¶ 1.

12.    The purpose of this declaration is to explain the bases for FDA's redaction of certain information partially responsive to Plaintiff's modified FOIA request. In addition to the information redacted in Document 1 and Document 2 that is non-responsive, all of the redacted information in both documents is exempt from disclosure pursuant to Exemption 3 and Exemption 4 of FOIA, 5 U.S.C. § 552(b)(3) and (4).

## SECTION 105 OF ADUFA

13.    Congress enacted Section 105 of ADUFA to assist FDA in its "continuing analysis of the interactions (including drug resistance), efficacy, and safety of antibiotics approved for use in both humans and food-producing animals." H.R. Rep. No.110-804, at 14 (2008), reprinted in 2008 U.S.C.C.A.N. 1287, 1295.

14.    Pursuant to that Section, which is codified at 21 U.S.C. § 360b(l)(3), sponsors of new animal drugs that contain an antimicrobial active ingredient must submit annual reports to FDA on "the amount of each antimicrobial active ingredient in the drug that is sold or distributed for use in food-producing animals." 21 U.S.C. § 360b(l)(3)(A).

15.    The annual reports must specify the amount of each antimicrobial active ingredient sold or distributed "by container size, strength, and dosage form." 21 U.S.C. § 360b(l)(3)(B)(i).

16.    Section 105 of ADUFA refers to reporting "by antimicrobial class" and directs FDA to "make summaries of the information reported under this paragraph publicly available, except that–(i) the summary data shall be reported by antimicrobial class, and no class with fewer than 3 distinct sponsors of approved applications shall be independently reported." 21

4

U.S.C. § 360b(l)(3)(E)(i). A true and accurate copy of the summary report for 2009 ("2009 Summary Report") is attached as Exhibit A(4).

17. FDA interprets a "distinct sponsor" for the purposes of determining how many distinct sponsors make up a particular antimicrobial class as a sponsor (1) that is "named in 21 C.F.R § 510.600 as the holder of an approved application for an animal drug product in that particular class on the last day of the annual reporting period" and (2) "actively sold or distributed such animal drug product at some point during that annual reporting period." 2009 Summary Report, Ex. A(4).

18. FDA has made summaries of the information reported under Section 105 of ADUFA publically available on its website, at http://www.fda.gov/downloads/ForIndustry/ UserFees/AnimalDrugUserFeeActADUFA/UCM231851.pdf.

19. The antimicrobial classes are Aminocoumarins, Aminoglycosides, Amphenicols, Cephalosporins, Diaminopyrimidines, Fluoroquinolones, Glycolipids, Ionophores, Lincosamides, Macrolides, Penicillins, Pleuromutilins, Polypeptides, Quinoxalines, Streptogramins, Sulfas, and Tetracyclines. See 2009 Summary Report, Ex. A(4).

## FDA'S REDACTIONS

20. FDA redacted information from Documents 1 and 2 that is exempt from disclosure under FOIA and FDA's regulations. This declaration focuses on the redactions to Document 2 because it is my understanding that Plaintiff does not object to the redactions made to Document 1.

21.     FDA redacted from Document 2, pursuant to FOIA Exemptions 3 and 4, all individualized sales data; all sales data comprised of aggregated data from only two distinct sponsors; and sales data comprised of aggregated data of three or more distinct sponsors in those instances where release of those data would reveal aggregated sales data for two distinct sponsors or individualized sales data pursuant to Exemptions 3 and 4.

### Information Redacted Pursuant to FOIA Exemption 3

22.     FOIA Exemption 3 exempts from mandatory release information that is specifically exempted by another statute. 5 U.S.C. § 552(b)(3). This exemption permits redacting or withholding information prohibited from disclosure by another statute if that statute requires that the matters be withheld from the public without discretion, or establishes particular criteria for withholding or refers to particular types of matters to be withheld. Id.

23.     The data Plaintiff seeks was submitted by private companies to FDA under Section 105 of ADUFA. As explained above, Section 105 of ADUFA directs FDA to provide summaries of such information to the public, but it also both prohibits FDA from disclosing annual sales data by antimicrobial class for antimicrobial classes with "fewer than 3 distinct sponsors" and mandates that FDA's reporting be "consistent with protecting . . . confidential business information." 21 U.S.C. § 360b(l)(3)(E)(i),(ii). For this reason, Exemption 3 exempts from disclosure *all* individualized sales data and *all* aggregated sales data from two distinct sponsors for routes of administration, including the sales data for the antimicrobial classes that were not independently reported in the 2009 Summary Report.

24.     As shown in the 2009 Summary Report, fewer than three distinct sponsors reported to FDA actively distributing and selling animal drugs domestically for the following antimicrobial classes in 2009: Aminocoumarins, Amphenicols, Diaminopyrimidines,

Fluroquinolones, Glycolipids, Pleuromutilins, Polypeptides, Quinoxalines, and Streptogramins. Ex. A(4). Additionally, fewer than three distinct sponsors reported to FDA selling and distributing animal drugs for export for the following antimicrobial classes in 2009: Aminocoumarins, Aminoglycosides, Amphenicols, Cephalosporins, Diaminopyrimidines, Fluoroquinolones, Glycolipids, Ionophores, Lincosamides, Macrolides, Penicillins, Pleuromutilins, Polypeptides, Quinoxalines, Streptogramins, and Sulfas. Id.

25. In some cases, revealing the aggregated sales data for a route of administration with three or more distinct sponsors could effectively reveal the sales data of a single sponsor or only two distinct sponsors for a given route of administration. In such cases, FDA redacted these aggregated sales data because Congress instructed FDA to withhold sales data from public disclosure by antimicrobial classes for antimicrobial classes with fewer than three distinct sponsors and directed FDA to protect confidential business information, see 21 U.S.C. §§ 360b(l)(3)(E)(i),(ii).

26. In the following eight instances, FDA redacted the aggregated sales data of three or more distinct sponsors because the release of these numbers would reveal the aggregated sales data of two distinct sponsors or individualized sales data: 1) Penicillins by "[i]njection" (domestic sales); 2) Penicillins for treatment of "[m]astitis" (domestic sales); 3) Penicillins by "[w]ater" (domestic sales); 4) Tetracyclines by "[i]njection" (domestic sales); 5) Tetracyclines by "[m]edicated [f]eed" (domestic sales); 6) Tetracyclines by "[w]ater" (domestic sales); 7) Sulfas by "[m]edicated [f]eed" (domestic sales); 8) Sulfas by "[w]ater" (domestic sales). See Document 2, Ex. A(3).

a.  For example, FDA redacted all of the domestic sales data for Sulfas, which were sold and distributed by these four routes of administration in 2009: medicated feed, oral, oral/water, and water. Document 2, Ex. A(3). FDA appropriately redacted the sales data for the oral/water category, because there is only one distinct sponsor in that category (referred to in this example as Sponsor A). Similarly, FDA properly redacted the sales data for the oral category because there are only two distinct sponsors in that category (referred to in this example as Sponsors A and B). Document 2, Ex. A(3). Although both the medicated feed and water categories have three or more distinct sponsors, if FDA were to release the domestic sales and distribution Sulfas totals for medicated feed and water, FDA would effectively be revealing aggregated sales data of only two distinct sponsors or individualized sales data as Sponsor A could easily add these totals and then subtract them from the aggregated sales data for all Sulfas sold and distributed domestically, which was made public in the 2009 Summary Report (517,873 kilograms). See Ex. A(4). Then Sponsor A could subtract from this remaining number its own sales totals for oral and oral/water, and the remaining number would be Sponsor B's 2009 data for Sulfas sold and distributed for oral administration.

b. To illustrate this in another example, as seen by Document 2, Penicillins were sold and distributed domestically in 2009 by injection, for the treatment of mastitis, by medicated feed, and by water. Ex. A(3). The sales data for Penicillins administered by medicated feed is an aggregation of only two distinct sponsors, id, and is therefore exempt from disclosure. FDA also redacted the aggregated sales data for injection, mastitis and water because, by using the total aggregated sales data for all Penicillins sold domestically, publically available in the 2009 Summary Report, competitors could reverse-calculate the aggregated sales data for the two distinct sponsors of Penicillins for medicated feed. This could be accomplished

8

by simply totaling the Penicillins sales data for injection, mastitis, and water and then subtracting that total from the aggregated sales number for Penicillins in the 2009 Summary Report. The remainder would be the aggregated sales data for the two distinct sponsors of Penicillins for medicated feed. This number is exempt from disclosure, as explained above, under Exemption 3 and Exemption 4.

The release of the redacted Penicillins sales totals could also reveal individualized sales data, also exempt from disclosure under Exemption 3. The two distinct sponsors who sold and distributed Penicillins by medicated feed could calculate their competitor's individualized sales data by adding the aggregated sales totals for injection, mastitis, and water, then adding their own sales data for medicated feed, and then subtracting this grand total from the aggregated sales number in the 2009 Summary Report. The remainder would be their competitor's sales data.

A similar analysis applies to FDA's redactions of Tetracyclines sold and distributed domestically for use by injection, medicated feed, and water.

### Information Redacted Pursuant to FOIA Exemption 4

27.  All of the information FDA redacted from Document 2 is exempt from disclosure under FOIA Exemption 4, which protects trade secrets and commercial or financial information obtained from a person that is privileged or confidential. 5 U.S.C. § 552(b)(4). FDA's regulation implementing Exemption 4 states that "[d]ata or information submitted or divulged to the [FDA] which fall within the definitions of a trade secret or of confidential commercial or financial information are not available for public disclosure." 21 C.F.R. § 20.61.

28.  FDA relied on Exemption 4 to withhold as confidential commercial information all of the forty-one individualized sales data that are reflected in Document 2. As discussed in paragraph 11, these individualized data are also not responsive to Plaintiff's request.

29. The redacted individualized sales data are confidential commercial information under Exemption 4. See 21 C.F.R. § 514.11(g)(2). Furthermore, it is my understanding that the animal drug market is very competitive. There are over 125 approved animal drug sponsors. See 21 C.F.R. § 510.600. Furthermore, as seen by the number of drugs listed as having been sold or distributed domestically or for export, competition exists both domestically and internationally. See Documents 1 and 2, Exs. A(2) and A(3).

30. Fifteen redactions in Document 2, as identified by the two circles in the annotated version of Document 2, see Ex. A(3), were made because they represent sales data from a specific class of antimicrobial drug administered by way of a specific route of administration and sold by only two distinct sponsors, or grand totals by route of administration for less than three distinct sponsors (e.g., the aggregated sales total for the "Topical" route of administration). This information, if divulged, would inform each of the two sponsors about the exact sales information for its only competitor in that sub-market. All each competitor would need to do is to subtract its own sales information from the released two-company total to obtain its competitor's sales data. Additionally, when I reviewed the unredacted sales data in Document 1, I discovered that, for some routes of administration, one sponsor has the majority of the market share, so revealing the aggregated sales data for two sponsors would essentially reveal that sponsor's sales data to all knowledgeable competitors.

31. Although FDA released the aggregated sales data for three or more distinct sponsors where possible, in the eight instances described above, in paragraph 26, and in four additional instances (for Injection, Mastitis, Medicated Feed, and Water for export), FDA redacted aggregated sales data of three or more distinct sponsors that could be used with publicly

available information to reveal the aggregated sales data of two distinct sponsors or the sales data of an individual sponsor pursuant to Exemption 4.

32. The analysis for Tetracyclines is similar to the analysis described for Sulfas and Penicillins in paragraph 26. Although certain routes of administration for Tetracyclines had three or more distinct sponsors in 2009 for domestic sales and distribution (such as injection, medicated feed, and water), see Document 1 and Document 2, Exhibits A(2) and A(3), other routes of administration for Tetracyclines had only one distinct sponsor (e.g., oral and topical). Id. Therefore, the release of sales data for some routes of administration could allow a competitor to calculate aggregated sales data for only two distinct sponsors and would allow these two distinct sponsors to calculate the other's individualized sales data, which FOIA exempts from disclosure.

33. A similar analysis applies regarding the aggregated grand sales totals for "Injection," "Mastitis," "Medicated Feed," and "Water" for export. Although three or more distinct sponsors make up the aggregated totals for injection, mastitis, medicated feed, and water, only one distinct sponsor makes up the aggregated total for the "Oral" route of administration for exports (Sponsor C), and only two distinct sponsors make up the aggregated total for the "Topical" route of administration for exports (Sponsor C and D). See Document 1 and Document 2, Exs. A(2) and A(3). Thus, if FDA released the sales total for injection, mastitis, medicated feed, and water, competitors would be able to back-calculate the aggregated sales totals for oral and topical, using the "Export" sales total revealed in Document 2 and in the 2009 Summary Report. See Exs. A(3) and A(4).

34. It is my understanding that the release of the sales data at issue is likely to cause substantial competitive harm.

11

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*
GORKA GARCIA-MALENE
FOIA Officer
Office of Communications
Center for Veterinary Medicine
Food and Drug Administration
U.S. Dept. of Health and Human Services

Executed on July 2, 2013, in Rockville, Maryland.